## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEON C. WHITE,<br>85 Cedar Trails Dr.<br>Belton, TX 76513<br><br>      Plaintiff,<br><br>      v.<br><br>JAMES N. MATTIS, in his official capacity as<br>United States Secretary of Defense;<br>1000 Defense Pentagon<br>Washington, DC 20301-1000<br><br>DR. MARK T. ESPER, in his official capacity<br>as United States Secretary of the Army;<br>101 Army Pentagon<br>Washington, DC 20310-0101<br><br>PHYSICAL DISABILITY BOARD OF<br>REVIEW<br>3351 Celmers Lane<br>Joint Base Andrews, MD 20762<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.: _____<br>)<br>)<br>)   **COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>COMPLAINT</u>

## <u>INTRODUCTION</u>

1.      This is an action for declaratory and injunctive relief brought by Leon C. White ("Plaintiff" or "White") against James N. Mattis, in his official capacity as United States Secretary of Defense, the Physical Disability Board of Review ("PDBR"), and Dr. Mark T. Esper, in his official capacity as the United States Secretary of the Army (collectively, the "Defendants"). As discussed below, the Defendants erred when they denied Plaintiff's application to the PDBR seeking disability retirement status and a combined disability rating of at least 30% for Plaintiff's medical disabilities. The PDBR decision was arbitrary, capricious, contrary to law, and

unsupported by substantial evidence. Specifically, the PDBR ignored clear evidence that White's Lower Back Pain status post Lumbar Fusion without Neurologic Abnormality warranted a 40% disability rating, which would in turn entitle White to a medical retirement from the Army. The PDBR's error deprived White of a higher disability rating and thus the stature and benefits that flow from being designated as a military retiree.

2.      When a military department determines that a member of the U.S. Armed Forces has one or more disabilities that make the member unfit for continued military service, he or she is normally separated from service with either (1) medical separation, or (2) medical retirement. This determination turns on the combined disability rating assigned by the military department to the conditions that render the service member unfit for continued service. In assigning disability ratings, military departments are required by statute to apply the VA Schedule for Rating Disabilities ("VASRD") (38 C.F.R. Part IV). If the military department assigns the service member a combined disability rating of 20% or less, the service member is medically separated. If the military department assigns the service member a combined disability rating of 30% or more, the service member is medically retired. A medical retiree is entitled, among other things, to military health care (TRICARE) for the retiree and the retiree's spouse, and the retiree's minor children, as well as access to military bases, commissary privileges, the right to wear the uniform on appropriate public occasions, space available travel on military aircraft, disability retirement pay, military funeral arrangements, and burial privileges in national cemeteries.

3.      In January 2008, Congress enacted the Dignified Treatment of Wounded Warriors Act ("DTWA"), which established a new federal agency—the PDBR – because of its concerns that military departments were not accurately and consistently assigning disability ratings. At a 2007 joint congressional hearing held before enacting the DTWA, the Chairman of the Veterans'

2

Disability Benefits Commission ("VDBC") cited a VDBC study which concluded that military departments frequently assigned lower disability ratings than the VA to the same service member, for the same medical conditions, under the same disability rating criteria (the VASRD). The Chairman further testified that it is "apparent that DoD has strong incentive to assign ratings less than 30% so that only separation pay is required and continuing family health care is not provided." During a Senate hearing concerning the DTWA, Senator Carl Levin acknowledged this ongoing problem and stated that "[t]he bill also establishes an independent board to review and, where appropriate, correct unjustifiably low Department of Defense disability ratings awarded since 2001."

4.     Before an Army service member can be evaluated by the PDBR, the service member must first undergo evaluation by the Medical Evaluation Board ("MEB"), which is a department of the Army. If the MEB finds that the service member is unfit for military service, then the veteran is referred to the Physical Evaluation Board ("PEB"), which is another agency of the Department of the Army. The PEB then determines the disability rating for separating service members.

5.     On November 6, 2003, White attended a physical therapy examination under the supervision of the MEB. The MEB determined that White was unfit for service and subsequently referred White for review by the PEB. On December 1, 2003, the PEB issued a decision granting White only a 20% disability rating and a medical separation from the Army with severance. The PEB based this determination on the MEB physical therapy examination conducted approximately a month before its decision. The MEB physical therapy examination found that White's forward flexion was measured at 45 degrees during a physical therapy examination, a measurement that

entitled White to a 20% disability rating and a medical separation. *See* Exhibit A, Flexion-Extension Diagram.

6.       About one month later, on January 5, 2004, White attended a Department of Veterans Affairs Compensation & Pension examination ("VA C&P"). During the VA C&P examination, the physician measured White's forward flexion at 30 degrees. Subsequently, the VA awarded White a 40% disability rating.

7.       On April 24, 2011, White petitioned the PDBR to reassess the PEB's decision and award him medical retirement. On March 6, 2015, the PDBR upheld the PEB's decision on the ground that the physical therapy examination was more probative and more likely reflected White's disability at the time of separation than the VA C&P examination, despite the fact that the VA C&P examination was conducted closer in time to White's March 2004 separation from the military. White now asks this Court to grant him relief by issuing an order concluding that the PDBR's decision was arbitrary and capricious, raising White's disability rating to 40%, and reclassifying his separation from the Army as a medical retirement, with all incumbent rights, privileges, and associations.

## JURISDICTION AND VENUE

8.       This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case raises federal questions under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.* Plaintiff also seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

9.       Plaintiff seeks solely equitable relief in this action, namely, an increase of his military disability rating and to be placed into medical retirement status.

10.       Plaintiff sought relief for this issue *pro se* before the PDBR, which was denied.

11.       Review of the PDBR's ruling with respect to Plaintiff's requests for an increase of his disability rating and to be placed into medical retirement status is appropriate because the ruling

was a final agency action for which there is no other adequate remedy in a court. *See* 28 U.S.C. § 704.

12.     Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because a Defendant resides in this judicial district.  Venue is also proper under 5 U.S.C. § 703 because this is a Court of competent jurisdiction.

13.     In accordance with 28 U.S.C. § 2501, this action is brought within six years of the PDBR's decision denying relief.

## PARTIES

14.     Plaintiff Leon C. White is a citizen of the United States, a veteran of the United States Army and a resident of Belton, Texas.

15.     Defendant James N. Mattis is the United States Secretary of Defense.  He is the chief officer of the Department of Defense, and exercises authority, direction and control over the Department of Defense.  Upon information and belief, Defendant Mattis performs a significant amount of his official duties within this judicial district.

16.     Defendant PDBR is a joint service review board.  The PDBR is located at Joint Base Andrews in Maryland.

17.     Defendant Dr. Mark T. Esper is the United States Secretary of the Army.  He is the chief officer of the Department of the Army, and exercises authority, direction and control over the Army. Upon information and belief, Defendant Esper performs a significant amount of his official duties within this judicial district.

## FACTUAL ALLEGATIONS

### White's Military Service

18.     White enlisted in the Army on January 15, 1994 and began his Active Duty Service on May 11, 1994.  At that time, White fulfilled his lifelong dream of serving in the Army.

19.     White served honorably in the United States Army as an infantryman from May 11, 1994, to March 27, 2004.  During his tenure, White was deployed to Kuwait and Macedonia for one year in each location.  White was also deployed to Germany for three years.

20.     White received numerous commendations and awards for his long military service, including but not limited to the Army Commendation Medal, the Joint Meritorious Unit Award, and the Army Achievement Medal.  He would eventually be, and was, honorably discharged.

21.     White's goal upon entering the Army was to serve 20 years and retire.  He would have continued his honorable military service and achieved his goal if he had not been incapacitated by his Lower Back Pain status post Lumbar Fusion without Neurologic Abnormality.

### White's Medical Condition

22.     In 1996, White jumped off a Bradley truck and felt a sharp pain in his back.  White continued to have pain in his back and lower extremity, which became progressively more severe.

23.     On February 21, 2002, White obtained lumbar and spinal x-rays.  The X-ray images revealed that White had disc space at L5-S1 compatible with degenerative disc disease and degenerative spurring of the sacroiliac that was consistent with osteoarthritis.  A lumbar spine magnetic resonance imaging (MRI) showed White had broad disc bulges at L3-4, L4-5 and L5-S1, with moderate to several spinal canal stenosis.

24.     In late 2002 and early 2003, White had two consecutive surgeries on his lumbar spine within 8 months.  Following his surgeries, White continued to have daily incapacitating pain.  His pain was so severe that it limited his ability to drive, perform most activities of daily living, and even sleep in bed.

25.     On March 27, 2003, White was placed on a temporary physical profile for his "lumbar degenerative disc disease" that prevented him from running, jumping, stooping, crawling, marching or lifting more than 20 pounds.  Subsequently on September 12, 2003, White was placed

on a permanent physical profile for his low back pain.  Being placed on a physical profile means

that one's duties are supposed to be adjusted in response to the acknowledged physical limitations.

## The Army Physical Disability Evaluation System

26.      Chapter 61 of Title 10 of the United States Code establishes the process through

which the Army discharges disabled service members.  It authorizes a Physical Evaluation Board

to discharge military personnel who are found to be unfit for continued military service due to

physical or mental disability.

27.      The process begins with the Medical Evaluation Board ("MEB").  The decision to

begin proceedings before the MEB rests entirely with the Army.  A service member may not refer

himself to the MEB.  The purpose of the MEB is to document a service member's medical status

and duty limitations and determine whether he or she meets the Army's retention standards.  The

MEB evaluates the service member through a series of examinations.  If the MEB determines that

the service member has one or more physical or mental conditions that fall below retention

standards, it refers the service member to a PEB for a fitness determination.

28.      The PEB is responsible for determining a service member's unfitness for duty as a

result of a physical or mental disability.  The PEB can find unfitness only when a disability rises

to the level of interrupting a service member's career.  If the PEB finds a service member is unfit

for duty, then it must assign a percentage disability rating from 0% to 100%, in increments of 10%,

for each condition.  The PEB's disability rating controls the amount of military benefits and

services to which the service member is entitled upon discharge.

## The Physical Evaluation Board's Decision

29.      On November 4, 2003, White's injury to his lower back caused him to fail the

medical retention standards set forth in Army Regulation (AR) 40-501, ¶ 3-41e (1)(2).  As a result

of the MEB's determination, White was scheduled for a physical therapy appointment to determine his range of motion measurements for his back injuries.

30.     On November 6, 2003, White attended a physical therapy examination conducted by Angela Diebal at the Darnall Army Community Hospital in Fort Hood, Texas.   Before beginning the exam, Diebal noted that White "can't sit in the bath tub" and "has to bend backward to get his left sock on."   Diebal further noted that "Pnt [patient] cant run, cant play with his kids, cant play basketball etc...cant lay on his back or side when sleeps."

31.     Diebal noted that White's forward flexion was measured at 45 degrees and his seated flexion was measured at 30 degrees.   Diebal also noted that "ROM limited by pnt effort. May not indicate true motion available."   But Diebal also noted that White "[a]ppears stiff in ROM measurements."

32.     On December 1, 2003, the PEB issued its decision to grant White a combined disability rating of 20% and separation with severance pay.   38 C.F.R. § 4.71a, Diagnostic Code 5241.

### White's VA Rating Decision

33.     Approximately one month later, on January 5, 2004, White attended a VA C&P examination at Temple Veterans Administration Medical Center.   The examination was conducted by Dr. Pratap Shah.   Dr. Shah thoroughly detailed White's numerous back surgeries and restrictions while White was on profile.   Those restrictions included: "no running, no jumping, no marching, no stooping, no bending, no crawling, no riding in tactical vehicles, no airborne, no fast aerobic exercises and no rucksacks."   Dr. Shah conducted a range of motion measurement and noted that White's "range of motion of the thoracolumbar spine shows flexion 30/90."

34.     On March 27, 2004, White was medically separated from the Army.

35.     On July 10, 2004, the VA issued its Rating Decision and awarded White with a 40% disability rating for his lower back injury. 38 C.F.R. § 4.71a, Code 50003-5241.  The VA based its decision on the VA C&P examination and White's medical records dating back to 1994. Since July 10, 2004, White has continued to maintain a 40% disability rating from the VA for his lower back injury.

### Physical Disability Board of Review – Arbitrary and Capricious Decision

36.     As part of its review of the disability rating, the PDBR is required to strictly follow the VASRD.  The PDBR is precluded from utilizing any Department of Defense directive that conflicts with the VASRD in making its decision.

37.     The PDBR acted arbitrarily by concluding that the PEB's physical therapy examination had more probative value than the VA C&P examination and more likely reflected White's disability at the time of separation.  The PDBR's decision explicitly acknowledges that the PEB's physical therapy examination took place five months before separation, whereas the VA C&P exam took place three months before separation.  It was arbitrary for the PDBR to find that an exam taken five months before separation more likely reflected White's disability at the time of separation than an exam taken three months before separation.  The PDBR decision also acknowledges that "although both examinations contained detailed comments, the VA C&P exam contained complete ROM's measurements to include a combined ROM scale."  Therefore, the PDBR decision implicitly acknowledges that physical therapy appointment relied upon by the PEB was not as thorough.

38.     The PDBR also acted arbitrarily by considering facts that are irrelevant to the range of motion measurements obtained during the PEB's physical therapy examination and the VA C&P examination.  As part of its review of the disability rating, the PDBR is required to strictly follow the VASRD.  The part of the VASRD that addresses the spine (38 C.F.R. § 4.71a) does not

allow for extraneous factors such as the individual's "effort" or demeanor to govern the appropriate disability rating and classification for a disability.  The PDBR's decision to rely on the PEB decision was in part predicated on the PEB's physical therapy examination, which the PDBR stated "contained relevant comments related to the CI's effort during the evaluation."  Considering White's perceived effort is subjective and arbitrary by definition.  The PDBR's decision also took into account the fact that White was satisfactorily performing unspecified mailroom duties at the time.  But the fact that White satisfactorily performed unspecified mailroom duties (with the help of ibuprofen and a back brace) does not refute the VA C&P exam's measurement of White's forward flexion at 30 degrees, which requires a disability rating of 40% under 38 C.F.R. § 4.71a .

39.    The PDBR concluded that the "PEB appropriately utilized the forward flexion of 45 degrees documented on the physical therapy examination to arrive at this 20% evaluation." However, given that the VA C&P examination was closer in time to White's separation and a more thorough examination, the PDBR should have overturned the decision of the PEB and granted White a 40% disability rating and permanent retirement.

40.    The PDBR's decision is arbitrary and capricious, unsupported by substantial evidence, and contrary to law because the PDBR failed to follow the requirements of the VASRD when deciding whether a 20% or 40% disability rating was appropriate for White's back disability. The VASRD requires that when reasonable doubt arises regarding the degree of disability, such doubt will be resolved in the favor of the veteran.  38 C.F.R. § 4.3.  Moreover, if there is a question as to which of two evaluations must be applied, the higher evaluation must be assigned if the disability picture more nearly approximates the criteria required for the higher rating.  38 C.F.R. § 4.7.

41.    The PDBR's arbitrary and capricious decision has deprived White of accomplishing his dream of retiring from the military.  As a current employee of the VA Hospital in Temple, TX, White frequently encounters veterans discussing the difference between separated veterans and retired veterans.  The perception among veterans is that separated veterans served for financial gain.  It upsets White that such a negative connotation could be associated with his military service, given his exemplary military record and his lifelong dedication to public service.

## COUNT I – VIOLATION OF ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 706(2)(A))

42.    Plaintiff incorporates the allegations in paragraphs 1 through 41 above.

43.    The PDBR acted arbitrarily and capriciously by affirming the flawed decision of the PEB and relying on irrelevant facts to support its decision that the PEB's physical therapy examination was more probative of White's injury at separation than the VA's Rating Decision.

44.    White has suffered a legal wrong as a result of the PDBR's arbitrary and capricious decision, because he was deprived of his right to a meaningful review from the PDBR.  The PDBR's incorrect decision caused White to remain with the stigma of medical separation from the Army.  This means White was deprived of a discharge status that his serious disability and honorable service warrant—medical retirement.

45.    White served his country honorably.  He received numerous service commendations, volunteered to serve our country in a time of great need, and risked his life to assist the Army in dangerous and important operations in the Gulf War.

46.    The PDBR exists to correct injustices by ensuring "the accuracy and fairness of combined disability ratings."[1]  The PDBR failed to meet that mission here.  Only awarding White medical retirement status would correct the injustice caused by the PDBR's arbitrary and

---

[1] *Id.* at 1.

capricious decision of approving the PEB's earlier determination.   White should be awarded a medical retirement.

## PRAYER FOR RELIEF

Leon C. White respectfully requests that this Court enter judgment against the Defendants and award the following relief:

a.      Find that the PDBR's determination, and the Army's decision to adopt the PDBR's determination, were arbitrary and capricious, unsupported by substantial evidence, and contrary to law;

b.      Increase White's disability rating to 40%;

c.      Amend White's Army records – including without limitation his DD Form 214 and his retirement orders--to reflect a permanent medical retirement;

d.      Declare, under the Declaratory Judgment Act, that the PDBR has violated the Administrative Procedure Act.

e.      Award Plaintiff costs and attorneys' fees; and

f.      Grant any other relief the Court deems proper.

Dated: December 6, 2018                          Respectfully submitted,

Richard E. Young, DC Bar # 298547
ryoung@sidley.com
SIDLEY AUSTIN LLP
1501 K. Street, N.W. #600
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

Andres Barajas (CA SBN 317399)
andres.barajas@sidley.com
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019

Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Nicholas S. Willingham (CA SBN 317952)
nwillingham@sidley.com
SIDLEY AUSTIN LLP
555 W 5th Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Barton F. Stichman
Bart@nvlsp.org
Rochelle Bobroff
Rochelle @nvlsp.org
David Sonenshine
David@nvlsp.org
NATIONAL VETERANS LEGAL
SERVICES PROGRAM
1600 K Street, NW. Suite 500
Washington, DC 20006
Telephone: (202) 621-5677
Facsimile: (202) 328-0063

# EXHIBIT A

